(No. 4014

WILLIAM B. MYERS, JR., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 18, 1947.*

CHIEF JUSTICE ECKERT, dissenting.

MAURICE DEWITT, for Claimant.

GEORGE F. BARRETT, Attorney General.

C ARTHUR NEBEL, Assistant Attorney General, for Respondent.

BERGSTROM, J.

Claimant filed his complaint on March 12, 1947 for damages to his airplane resulting from an accident which occurred on September 27, 1946 while participating in a test mobilization of the Air Corps of the Illinois Reserve Militia.

The record consists of the Complaint, Departmental Report, Claimant's Waiver of Brief, and Respondent's Waiver of Brief.

The claimant, William Myers, Jr., testified that he served in the United States Air Forces during the last war for almost three years; that he was connected with the Air Transport Command as Chief Flight Check Engineer and, as a part of his duties, had to relieve the co-pilot and pilot in test flights and act as co-pilot engineer on runs of lighter aircraft in the United States. It was also part of his duties to bring planes from the hangar to the flight line and taxi planes while on the ground. He had flown about 3,000 hours and had been on air fields in thirty foreign countries and on practically every airport in the United States of any size, and had completed twenty-four circuits on the Hump which is considered the most hazardous route in the world, without any accident.

The evidence further shows that claimant was a rated pilot and was commissioned as a Captain in the Air Wing of the Illinois Reserve Militia on June 16, 1946, and that pursuant to orders he reported for training maneuvers of the Air Wing of the Illinois Reserve Militia at the Chicago Municipal Airport. There were about fifty aircraft engaged in the maneuvers and he, like most of the officers in the Air Wing, owned his own plane. On September 27, 1946 while engaged in said maneuvers and while acting under orders, claimant's airplane collided with a jeep and was severely damaged. When the accident happened claimant had the left wing position in a V formation. He was flying a B.T. 13 and had very limited ground vision while taxiing, and he testified that in taxiing or flying in formation each of the planes of the wing V are to watch the flight leader and maintain their positions, and it is his duty to keep his eyes ahead for any obstructions, such as other airplanes. It is also the duty of the control tower to warn the pilot of any obstructions. Section 1.130 of Standard Airport Traffic Control Procedures, which was introduced into evidence, states ''The importance of issuing definite concise instructions to pilots of taxiing aircraft cannot be overemphasized. The visibility problem in an airplane is most acute when taxiing. Very few aircraft afford any forward vision for several yards directly in front of the airplane and the pilot must depend to a large degree upon the control tower to issue necessary instructions which will assist him in determining the proper taxi route and will prevent collision with other aircraft or objects''.

On this particular flight the pilots were under orders to ignore the control tower and to depend on the landing signal officer for their signals. At the time the accident happened the landing signal officer gave the

"all clear" signal and was waiving the flight on. The evidence also shows that the signal officer was the one who left the jeep at the end of the runway. Claimant's testimony is substantiated by another officer in the same flight. From the evidence, the Court is of the opinion that the accident was caused by the negligence of the signal officer, and claimant would be entitled to an award if there was some legal basis on which to give it. In the case of *Butterworth* v. *State,* 14 C. C. R. 188, this court denied the claim where the claimant owned his airplane which was severely damaged while acting under orders investigating flood conditions, when the plane in taking off smashed into a ditch, as there was no legal basis on which to make an award.

We have held in numerous cases that an employee's property, damaged by the negligence of another employee, was not compensable; that the State does not insure the property of an employee used by such employee in his employment; and that the State is not liable for damages caused by the negligence of its employees. These cases were all decided, however, before the new Court of Claims Act went into effect in July 1945, which, under paragraph C, Section 8 of the said Act, gave the Court jurisdiction of cases against the State of actions sounding in tort, and which specifically provides that the defense that the State is not liable for the negligence of its officers, agents and employees in the course of their employment, shall not be applicable. As this section reads, the words officers, agents and employees are written in this order and are immediately followed by the words "in the course of their employment". We construe the words officers and agents as used here, with the word employees, to make it all inclusive so as to cover any person serving the State under the heading of em-

ployment, as the word employment affecting a relationship of master and servant is ordinarily construed. As the Statutes must be strictly construed, the words officers and agents as here used would mean the same as employees. In view of the above provisions there would be no difficulty in deciding the case before us if claimant, while on active duty with the militia, could be classified as employed by the State.

In denying such a claim, *Butterworth* v. *State, supra,* in our dictum, referred to claimant's status, in substance, as an employee of the State, but this point was not at issue or controlling in this case. In the case before us it is a material fact, and we must necessarily decide whether a member of the militia while on active duty, is or is not an employee of the State. A member of the militia is rendering the highest degree of service to the State which it is possible for a citizen to render. He is protecting and defending the sovereign power of the State. He is performing a duty which a citizen may be called upon to perform by his government in time of national emergency with or without his consent. Life itself may be the price he must pay for enjoying his high privilege of citizenship. It is not a contract of employment, measured by the accepted concept of such a contract with respect to private employment. *Hays* v. *Illinois Transportation Co.,* 363 Ill. 398. The minute he is sworn in he is subject to the orders of his superiors. His individual freedom of action is strictly limited and restricted. He is governed by the terms of the military code, and penalties for infractions of the regulations therein prescribed may result in punishment by the military and may even extend to imprisonment, and in time of war, death. His rate of pay, subsistence, clothing, medical service, disability compensation and like matters,

are all provided for by specific statutory authority. It is essentially different from the relationship of "master and servant" as this relationship is considered by existing law and custom.

Under Par. C of Sec. 8 of the new Court of Claims Act, this court could, in a proper case, award damages to property where the accident was caused by the negligence of an employee of the State. However, for the reasons above stated, we must conclude that a member of the militia cannot be considered an employee of the State, and an award cannot be allowed under said Par. C of Sec. 8. Neither are we advised of any authority under the Military and Naval Code for payment of damages to private property owned by members of the militia, nor has counsel for claimant presented any legal basis for payment of this claim. In the absence of express statutory authority to pay claims of this nature they must be denied, even though claimant has suffered damage resulting from circumstances beyond his control and regardless of the equities of the case.

For the reasons stated, the claim is hereby denied.

ECKERT, C. J. (Dissenting).

## DISSENTING OPINION OF JUDGE ECKERT

Under Section 8 of "An Act to create the Court of Claims, to prescribe its powers and duties, and to repeal an Act herein named", which became effective July 17, 1945, this Court was given jurisdiction to hear and determine:

"All claims against the State for damages in cases sounding in tort, in respect of which claims the claimants, would be entitled to redress against the State of Illinois, at law or in chancery, if the State were suable, and all claims sounding in tort against The Board of Trustees of the University of Illinois; provided, that an award for damages in a case sounding in tort shall not exceed the sum of $2,500.00 to or for the benefit of any claimant. The defense that the

61

State or The Board of Trustees of the University of Illinois is not liable for the negligence of its officers, agents, and employees in the course of their employment shall not be applicable to the hearing and determination of such claims."

To construe the obviously broad language of this section so as to exclude members of the Illinois Reserve Militia, while on active duty, appears contrary to the expressed legislative intent. There is nothing in the act from which we can rightfully infer that the General Assembly intended the words "officers, agents and employees" to be limited to a "master and servant" relationship.

A member of the Illinois Reserve Militia, while on active duty, "rendering the highest degree of service to the State which it is possible for a citizen to render", is certainly as much an "officer, agent and employee" of the State as is a member of the Illinois State Police or any other person serving the State in any other type of service. It is true that distinctions can be drawn between various types of employment within the State, but service in the Illinois Reserve Militia is nevertheless an employment of the highest type, and as integral a part of State government as can be found.

I am of the opinion that Section 8 (C) of the present Illinois Court of Claims Act was intended to include members of the Illinois Reserve Militia, while on active duty, and that therefore an award should be made in this case.